The next case is Canas v. Barr. May it please the Court, my name is Robert Graziano. I represent Petitioner Jose Henry Lopez Canas. Mr. Lopez Canas remains detained over the last year and a half at the Buffalo Federal Detention Facility because he's very afraid to return to El Salvador because he fears he'll be tortured or killed if he's returned. At his hearing, the immigration judge Are you retained counsel? That is, are you paid counsel? Your Honor, yes. I would say I'm a low-bono counsel, but I am retained. Low-bono counsel. Okay. Thank you, Your Honor. Mr. Lopez Canas remains detained because he has, I think, a very reasonable and credible fear of being tortured or killed if he's returned. At his hearing, the immigration judge made a finding that Mr. Lopez Canas was not credible. However, the Board, in its decision, decided to discredit that finding and basically set it aside. But if Petitioner's testimony is taken as credible, we believe that he set forth a valid claim of relief under the Convention Against Torture. And in his decision, the immigration judge even conceded that there was record evidence showing the evidence of extensive corruption in El Salvador. But he seems to rely on the fact in the decision that not everyone in El Salvador is corrupt. But that finding, also the Board, in its decision, also said that it appears that the Salvadoran government is taking efforts to curtail the gang activities and their violence. But I cite the Court's decision in De La Rosa v. Holder in the Second Circuit 2010 for the fact that some officials taking an action to prevent the torture would seem either inconsistent with the finding of government acquiescence nor necessarily responsive to the question concerning the Cat case. Your Honor, in its essence, we are saying that the fact that the judge's finding of the lack of credibility is belied both by the Board's decision and by, of course, the reasonable fear interview process, which did find him credible and did find that he had established a reasonable fear. The BIA didn't rely on lack of credibility, right? The IJ did, but the BIA decided on review to focus solely on whether there was a distinct social group. Am I right about that? Your Honor, on the issue of the withholding of removal, straightholding of removal, yes, it was the social group argument that they relied on. However, the protected ground of the social group is not necessary on a finding under the relief under the Convention Against Torture. All that is required is the likelihood that the person will be tortured or killed with government acquiescence, which has been interpreted as willful blindness, not just actual activity in concert with those torturing or killing the individual. In terms of the case — in terms of the withholding of removal claim, Your Honor, we believe that the second ground stated, the persons who have been deported from El Salvador and are perceived as deportees from El Salvador, would state a protected ground because every country has a protected ground. It looks at its own expatriates and those who are returned from being expatriates as a social group. I don't think it would be only El Salvador that would do that. And certainly the gang members and those who have persecuted the petitioner here would believe that that is a special group that could have wealth and affluence. But it's not their wealth and affluence that makes them a social group. It's the fact that they are deportees who have been returned from the United States. But on the issue of the claim against — on the Convention Against Torture, Your Honor, that requirement of a protected group under the five factors for asylum and withholding of removal is not necessary. And we believe that the board's finding in the Convention Against Torture claim seems to be based on the fact that they are — that the government of El Salvador is taking efforts to curtail the gang activities. But we don't believe that the fact that there are certain good police officers and good actors in the government of El Salvador means that Mr. López-Canas has not stated a claim for relief. And we believe that, at a minimum, the matter should be sent back for a remand because the — throwing out of the adverse credibility finding, I think, calls into question the judge's conclusions on the Convention Against Torture. Thank you. May it please the Court, Lindsay Corliss for the respondent. This Court should deny the petition for review. Substantial evidence supports the agency's denial of withholding of removal and cap protection. Now, first, the agency properly denied withholding of removal because Petitioner failed to demonstrate a nexus between his experienced or feared harm and a protected ground in the withholding of removal statute. Now, Petitioner specifically named two putative particular social groups upon which he based his claim. On page 195 of the record, he tells the immigration judge they are former bus drivers to El Salvador or in El Salvador and returnees from the United States to El Salvador who are perceived to have wealth. And he repeats both of those named putative particular social groups in his brief — in his appeal brief to the Board on page 9 of the record. Now, Petitioner presented no evidence to meet his burden to show that bus — former bus drivers in El Salvador are viewed as a distinct segment of Salvadoran society, such that it — There is evidence in the record that bus companies are subject to extortion and that bus drivers are subject to harm as a result. Certainly. There's substantial evidence saying that it's very dangerous to drive buses in El Salvador. However, Petitioner has not been a bus driver for 15 years. And none of those articles that discuss the dangers that current bus drivers face mention anything about former bus drivers being any sort of a distinct segment of society. I would just note, even if Petitioner were a bus driver, it's not necessarily an immutable characteristic. This is a job. It's an employment. It's not a characteristic that one simply can't expect someone to change. So bus drivers in and of themselves, the immigration judge found, wouldn't have been a particular social group. But in any event, Petitioner didn't claim that he was part of that particular social group because he's not a bus driver anymore. None of the evidence, even his testimony, mentions that former bus drivers are seen as a distinct segment of society. Now, Petitioner was given several opportunities, both by his own counsel and by the DHS's counsel, to explain why that group is seen as socially distinct. He was asked why they were noticeable, why they were recognizable. Would anyone know that he was a former bus driver? Did anyone, when he returned in 2009 and was not driving buses, did anyone recognize him as being a member of this? And he repeatedly stated that he was not so recognized and that the people who would recognize him as being a former bus driver would be people who personally knew that he drove buses, those being dispatchers or former friends. So he didn't meet that burden with his testimony, and none of the documentary evidence that he presented mentions this putative particular social group. Now, Petitioner's second group, returnees from the United States to El Salvador who are perceived as wealthy, is substantially similar to other groups that have been rejected by both the Board and this Court in precedential opinions. Now, Petitioner has not actually distinguished his claim from those claims. Now, I realize that Petitioner has stated before this Court that his group is not premised on the perception that he is wealthy. However, that is not the group that he named before the immigration judge, and it's not the group he named before the Board. And once again, that's on page 195 of the record. He told the immigration judge that the social group involves people who are perceived as wealthy, and he repeats that claim in his appeal brief on page 9 of the record. So he hasn't distinguished his claim from the properly rejected claims by this Court or the immigration judge. And furthermore, he hasn't identified any evidence showing that that group is perceived to be a distinct group in El Salvadoran society. He once again didn't state it in his testimony, and in fact, he stated that he was not so recognized, even by gang members, as being a member of this group. He said that they asked him for his name. They had no idea who he was when he first arrived in 2009 as an expatriate. And the reason why he was targeted was because the gangs wanted him to collaborate with them. That's what he repeatedly testified to. So he doesn't meet his burden of showing a socially distinct group in his testimony, and also the documentary evidence doesn't mention that putative group either. And moving on to the cat protection claim, substantial evidence also supports the agency's denial of cat protection. Now, Petitioner admitted that he didn't fear that a public official would directly target him, and instead he claimed that he believed that gang members would target him. So at a minimum, it was his burden to show that the board, that the government in El Salvador would either acquiesce or be willful to, or willfully blind to his torture by gang members. But he didn't meet that burden, once again, in his testimony or in his documentary evidence. When asked what the police would do if something were to happen to him, this is what he stated. He said that if I reported that I were harassed to the police, the police would probably arrest the gang member and hold them for about three days, but it wouldn't do anything because then he'd be released after three days. That's not willful blindness. It might be ineffectual, but that's not tantamount to willful blindness. He also mentioned that the police go door to door in his mother's community to find out if people are okay. Now, he says, once again, that's not effective because then gang members sometimes come in and steal things from these people anyway. But it's not the police willfully being blind to gang members' behavior. And we also see that that finding, that the government is not willfully blind to this conduct, is also supported in the documentary evidence. The country reports- It happens if, as I guess the BIA determined, the Salvadoran police actively seek to curtail gang activities, but there's other evidence of police officers who help gang activities. What are we to make of that? And haven't we rejected an approach undertaken by the BIA in some other cases where they look at the fact that some police officers or some components of the government don't acquiesce, but others do? I think that that goes right down to the fact that we have to look at the record before the board or at any particular case. If somebody were to have presented evidence that a public official was targeting them, then the fact that maybe the wider country reports state that many others do not wouldn't be as persuasive. But Petitioner has admitted that he wasn't targeted by anyone or threatened by anyone with police connections. He hasn't disputed any of the evidence showing- that stated that the new president in El Salvador is taking aggressive measures against gangs, that they've actually put police officers on buses to monitor bus routes. There's also a lot of criticism of all of the aggressive policing of the gang members. There's actually a lot of evidence that perhaps the police are taking too extreme of measures. If you see in the country report, it says that the police killed 337 gang members in 2017 in extrajudicial killings and 603 in 2016. You know, the country report also states that there are reports of arbitrary arrests of suspected gang members. So this is a country that does recognize its serious problem with gangs, but it is not being willfully blind. I think what you're saying is that the argument was not made. Well, the argument wasn't made. He didn't claim that he was going to be- and he didn't present evidence that he would have been a special circumstance. So I could see if he had said, this gang member is the brother of that police officer and that police officer is going to turn a blind eye, you know, with claims like that. That's not this case. He has no connection. He's never been threatened by anyone who has a police tie. He hasn't- he didn't- in 2009 he didn't report his incident with gang members to the police. And he even himself said that he believes that the police would arrest a gang member if he were to report harassment. So where he's acknowledging that the police wouldn't be completely blind to what was going on to him, he simply didn't meet his burden of proof. Okay. And if there are no further questions, I'll just thank you for your time. Your Honor, I believe that the question about the level of police corruption is, I think, critical to this case. The main piece of evidence that was submitted was the 2018 El Salvador Department of Human Rights report, which even the judge indicated showed that there was widespread corruption, that in general government officials in El Salvador are corrupt. The judge then made an inquiry to me as to whether or not they specifically mentioned police officials, and I didn't see any specific mention of police officials in the report. But if government officials are clearly in general corrupt, that would include police officers. It would not exclude them. And the fact that Mr. Lopez Canas may not have been fully aware of the level of corruption in his country does not negate the fact that in reality he could be subject to torture and death and not be protected because the government is not able to do that based on the corruption and the high levels of corruption throughout the country. Thank you. Thank you both, and we'll take the matter under submission.